### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| In Re: | **RICHARD BRAUDE** : | **CHAPTER 13** | |
| | : | | |
| | **Debtor** : | | |
| | : | **BANKRUPTCY NO. 19-16221-mdc** | |
| | : | | |
| | : | DATE: | TBD |
| | : | TIME: | TBD |
| | : | LOCATION: | Courtroom #2 |

### DEBTOR'S MOTION TO SELL FREE AND CLEAR
### THE REAL PROPERTY LOCATED AT 2040 S. OPAL STREET,
### PHILADELPHIA, PA 19145, PURSUANT TO 11 U.S.C SECTION 363

The Debtor, Richard Braude, by and through his attorneys Lohr & Associates, Ltd., comes forward and seeks the Court's approval for the free and clear sale of the real property located at 2040 S. Opal Street, Philadelphia, PA 19145, OPA #481311500 (the "Property"), and in support thereof avers as follows:

### JURISDICTION

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 to approve the sale of the Property which is the subject of this Sale Motion.

2.      This Sale Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).

3.      The statutory predicates for the relief requested in this Sale Motion are 11 U.S.C. §§ 105 and 363, and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9014.

### BACKGROUND

4.      On February 13, 1996, the Debtor purchased the Property for the purchase price of $19,500.00.  (A true and correct copy of the deed is attached hereto as Exhibit 1).

5.      On October 2, 2019, the Debtor filed a voluntary petition under chapter 13 of the

Bankruptcy Code, thereby commencing the above-captioned bankruptcy case.

6. On February 24, 2020, the meeting of creditors was held and concluded.

7. On January 6, 2022, the Debtor filed his Seventh Amended Chapter 13 Plan, and as of the date of this Motion, has not yet been confirmed.

8. Paragraph 2(d) of the Debtor's Seventh Amended Plan sets forth in pertinent part:

> In addition to the amount already paid into the plan coupled with the $100.00 monthly payment going forward, the Debtor has identified 7 properties to sell during the term of this Chapter 13 Plan, of which the expected proceeds before subtracting closing costs are $935,000.00.

9. Paragraph 9 of the Debtor's Seventh Amended Chapter 13 Plan sets forth in pertinent part:

> Proofs of Claim #13 and #14, filed by the Water Revenue Bureau and the City of Philadelphia/School District of Philadelphia respectively, contain statutory liens that encumber specific properties of the Debtor. The Debtor shall list these seven properties for sale that are encumbered by the statutory liens in proofs of claim #13 and #14. These statutory liens shall be paid directly to the Water Revenue Bureau and City of Philadelphia/School District of Philadelphia at the time of closing on these properties, and these funds shall not be paid to the Chapter 13 Trustee. The following seven properties shall be listed for sale at the assigned prices and all shall be sold on or before October 1, 2022.
>
> 1. 1836 S. 24th Street, Philadelphia, PA - $125,000.00;
> 2. 1838 S. 24th Street, Philadelphia, PA - $125,000.00;
> 3. 1544 S. 30th Street, Philadelphia, PA - $125,000.00;
> 4. 2134 S. Garnet Street, Philadelphia, PA - $200,000.00;
> 5. 2240 Hemberger Street, Philadelphia, PA - $130,000.00;
> 6. 2019 S. Opal Street, Philadelphia, PA - $105,000.00; and
> 7. 2040 S. Opal Street, Philadelphia, PA - $125,000.00.

10. On , October 11, 2021, the Debtor listed the Property for sale at $325,000.00. There were no offers received at this price. On October 27, 2021, the listing price was reduced to $310,000.00. There were no offers received at this price. On November 8, 2021, the listing price was reduced to $299,000.00. There were no offers received at this price. On November 22, the

listing price was reduced to $298,000.00. There were no offers received at this price. On December 2, 2021, the listing price was reduced to $295,000.00. There were no offers received at this price. On January 22, the listing price was reduced to $289,900.00. (A true and correct copy of the listing as it appeared in the Multiple Listing Service and listing price history is attached hereto as Exhibit 2).

11. On January 31, 2022, an offer in the amount of $289,900.00, was received.

12. On January 31, 2022, an agreement of sale was executed with the sale price being $289,900.00. (A true and correct copy of the fully executed agreement of sale is attached hereto as Exhibit 3).

13. The Debtor determined that the offer accepted was the highest and best offer for the Property.

## SECURED CLAIMS THAT ENCUMBER THE PROPERTY

14. The purchaser of the Property ordered and received a title search. (A true and correct copy of the title commitment is attached hereto as Exhibit 4).

15. There are two (2) federal tax liens in favor of the United States of America, Internal Revenue Service ("IRS") listed in paragraphs 13 and 14 of Exhibit 4, in the amounts of $45,232.91 and $618,957.84 respectively.

16. On November 17, 2021, the IRS filed amended secured proof of claim 4, in the amount of $288,289.36. On March 21, 2022, the IRS provided a lien payoff in the amount of $199,905.15. (A true and correct copy is attached hereto as Exhibit 5). Based upon the priority established by 11 U.S.C. § 507, all proceeds after closing costs and payments as listed in paragraphs 18 and 19, shall be paid to the IRS as the proceeds are less than the amount of the claim.

17.     There are seven (7) municipal liens filed by the City of Philadelphia listed in paragraphs 15 through 21 of Exhibit 4 with a total amount owing of $10,028.76.

18.     On August 27, 2020, the City of Philadelphia Water Revenue Bureau filed an amended secured proof of claim #7, in the amount of $52,775.64. The portion of this claim that is attributed to property taxes due and owing on the Property is $0.00. The City of Philadelphia Water Revenue Bureau also filed secured proof of claim #13 in the amount of $24,305.44. The portion of this claim that is attributed to property taxes due and owing on the Property is $1,293.38, which shall be paid directly to the City of Philadelphia Water revenue Bureau at the closing of this property.

19.     On September 23, 2021, the City of Philadelphia/School District of Philadelphia filed amended proof of claim #9, in the amount of $221,422.40. The secured portion of proof of claim #9 is $148,321.42 and the remainder is a priority unsecured claim in the amount of $62,582.06. The portion of this claim that is attributed to property taxes due and owing on the Property is $245.00, which shall be paid directly to the City of Philadelphia at the closing of this property. On October 8, 2020, the City of Philadelphia/School District of Philadelphia also filed an amended secured proof of claim #14 in the amount of $69,617.37. The portion of this claim that is attributed to property taxes due and owing on the Property is $11,020.26, which shall be paid directly to the City of Philadelphia/School District of Philadelphia at the closing of this property.

20.     The Pennsylvania Department of Revenue filed proof of claim #8 with a secured portion of $5,087.16, unsecured priority portion of $395.55, and general unsecured portion of $487.65. To the extent there is any payment on this claim resulting from the sale of the Property, it will be premised upon the priority established by 11 U.S.C. § 507.

21. Sharon Bank filed proof of claim #1 in the amount of $67,870.96. Subsequent to the commencement of this bankruptcy case, Sharon Bank was granted relief from the automatic stay to expose the collateral secured by proof of claim #1 to a sheriff sale. The property [421 Ritner Street, Philadelphia], was subsequently exposed to a sheriff sale and title transferred to Sharon Bank, which shall not pursue any deficiency judgment against the Debtor. Accordingly, Sharon Bank will not be paid any proceeds from the sale of the Property.

### 11 U.S.C. § 363 PROVIDES A BASIS TO SELL THE PROPERTY FREE AND CLEAR OF ALL LIENS

22. Section 363(f) is the general section authorizing free and clear sales of property of the bankruptcy estate.

23. In particular, 11 U.S.C. § 363(f) lists five situations in which a free and clear sale may be made, as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

24. The list under section 363(f) is exclusive which permits a sale even if only one of the criteria is satisfied.

25. One of the statutory predicates relied upon by the Debtors in this Sale Motion is 11 U.S.C. § 363(f)(5), which has been recognized by bankruptcy courts as approving sales of real

property free and clear of liens and encumbrances in situations where lien holders are not paid the full amount of their lien(s).

> Courts have established that the term 'money satisfaction' does not mean 'full money satisfaction'. *In re Grand Slam U.S.A.*, 178 B.R. 460, 461 (E.D. Mich. 1995)(holding that requiring full money satisfaction "is inconsistent with the Bankruptcy Code"); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994)(Construing 'money satisfaction of such interest' appearing in subparagraph (f)(5) to mean a payment constituting less than full payment of the underlying debt. Because any lien can always be discharged by full payment of the underlying debt, there would be no sense in subparagraph (f)(5) authorizing a sale only if that could be done.'). Thus, this Court could approve sales pursuant to §363(f)(5) provided that a legal or equitable proceeding existed that could force a junior lien holder to accept a payment of less than the full amount of the security interest.

> It is important to focus on the hypothetical nature of language of §363(f)(5). The section provides that as long as the junior interest "could be compelled" it is sufficient to authorize a §363(f)(5) sale. There is no requirement that the legal or equitable proceeding compelling the acceptance of less then full value actually occur prior to the §363(f)(5) sale, or if at all. Furthermore, if the "legal or equitable proceeding" contemplated by §363(f)(5) would result in the junior lien holder receiving nothing, then a §363(f)(5) sale that pays them nothing or gives them an unsecured claim to be redeemed for some dollar amount would appear to be permissible. See e.g. *Scherer v. Federal Nat'l Mortgage Ass'n* (*In re Terrace Chalet Apartments Ltd.)*, 159 B.R. 821, 829 (N.D. Ill. 1993)(adopting the view "authoriz[ing] the sale and consequent lien extinguishment if the creditor could be crammed down pursuant to Section 1129(b)(2)"); *In re Gulf States Steel*, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002)(noting that "Section 363(f)(5) permits a sale free and clear if the trustee can demonstrate the existence of another legal mechanism by which a lien could be extinguished without full satisfaction of the secured debt.").

> *In re Levitt & Sons, LLC*, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008).

26. The Court in *In re Lehigh Coal & Navigation Co.*, 2012 Bankr. LEXIS 91, 2012 (Bankr. M.D. Pa. Jan. 5, 2012), recognized a hypothetical foreclosure sale as a basis for satisfying the requirement of 11 U.S.C. § 363(f)(5) as follows:

> Another argument is to allow the sale under § 363(f)(5). That subsection permits a sale when the lienholder "could be compelled, in a legal or equitable proceeding,

to accept a money satisfaction of such interest." Since a junior lienholder could be compelled to accept a money satisfaction of its lien under a foreclosure sale or a receivership, an undersecured creditor arguably could be stripped of its interest that exceeds the value of the property being sold under § 363(f).

2 William L. Norton, Jr., Norton Bankruptcy Law & Practice 3d § 44:24 (2011) (footnotes omitted).

*In re Lehigh Coal & Navigation Co.*, 2012 Bankr. LEXIS 91, *9-10 (Bankr. M.D. Pa. Jan. 5, 2012).

27. Accordingly, if any creditor holding a lien secured by the Property foreclosed on its lien, and the Property was exposed to and sold at a sheriff sale in Philadelphia County, Pennsylvania, the costs of the sale would first be paid to the Sheriff of Philadelphia County, next any outstanding property taxes would be paid, followed by payment to foreclosing creditor to the extent of its upset price, with any remainder to the lien holders in order of priority.

## THE RELIEF SOUGHT DOES NOT VIOLATE 11 U.S.C. 506(c)

28. Some of the costs and expenses of selling the Property may be borne by junior lienholders.

29. Courts have found that when costs of the sale or preservation of the property at issue are reasonable and necessary and these benefit secured creditors, the proposed distribution of funds has been approved.

> The Third Circuit has held that "to recover expenses under § 506(c), a claimant must demonstrate that (1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a direct benefit to the secured creditors." *In re C.S. Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994) (citing *Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80, 86-87 (3d Cir. 1989); *In re McKeesport Steel Castings Co.*, 799 F.2d 91, 94-95 (3d Cir. 1986)) (alteration in original). *See also* 4 Collier on Bankruptcy ¶ 506.05[9], at 506-129 ("In general, the party seeking the recovery of an expense under section 506(c) bears the burden of proof," including "demonstrating the necessity of the expense, its reasonableness, and the existence and extent of any benefit to

the secured creditor." (citations omitted)). Bald assertions of necessity and benefit will not suffice to establish a claim. Instead, the claimant "must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral." *In re Glasply Marine Indus.*, 971 F.2d 391, 394 (9th Cir. 1992); *see also In re C.S. Assocs.*, 29 F.3d at 906. The claimant must also "show that . . . funds were expended primarily for the benefit of the creditor and that the creditor directly benefitted from the expenditure." *In re Flagstaff Foodserv. Corp.* (Flagstaff II), 762 F.2d 10, 12 (2d Cir. 1985); see also *In re C.S. Assocs.*, 29 F.3d at 906. "Courts have narrowly construed § 506(c) to encompass only those expenses that are specifically incurred for the express purpose of ensuring that the property is preserved and disposed of in a manner that provides the secured creditor with a maximum return on the debt." *In re C.S. Assocs.*, 29 F.3d at 907 (quoting *In re Parr Meadows Racing Ass'n*, 92 Bankr. 30, 35-36 (E.D.N.Y. 1988)).

*Margolis Law Firm, L.L.C. v. BMW Fin. Servs. NA LLC* (*In re Towne, Inc.*), 2012 U.S. Dist. LEXIS 87871, *16-18 (D.N.J. June 25, 2012).

30. In the case at bar, the expenses of the sale will be borne primarily by allowed secured creditors.

WHEREFORE, the Debtor prays that this Honorable Court enter an order granting his Motion and for such other relief as is deemed just and proper.

                                              Respectfully submitted,

                                              Lohr & Associates, Ltd.

Dated: March 29, 2022            By:     /s/ Robert J. Lohr II
                                                       1246 West Chester Pike
                                                       Suite 312
                                                       West Chester, PA 19382
                                                       (610) 701-0222 - telephone
                                                       (610) 431-2792 - facsimile
                                                       bob@lohrandassociates.com - e-mail